## Campbell *against* Wilson.

A tract of land with a man and his family residing upon it, is not unseated as to that part which is not cleared, whether the settler has entered with or without title; and can not be sold for taxes.

A tract of land, upon which there is an actual residence, can not be sold for taxes, whether the resident has property sufficient to pay the taxes or not.

A tract of land originally having in it four hundred acres, one hundred were divided off and sold, and the purchaser occupied it; the residue of the tract assessed in the name of the original warrantee is the subject of sale for taxes, as unseated.

ERROR to the common pleas of *Juniata* county.

This was an action of ejectment by *George Wilson* against *William Campbell* for a tract of land. The plaintiff claimed title under a warrant to *Bartholomew Wistar*, patent to *Samuel Otis*, and sale for taxes in 1820 to him. The defendant showed no title, but relied upon his possession. The question turned upon the validity of the sale for taxes. All the facts are fully stated in the opinion of his honour who delivered that of the court.

*A. S. Wilson* and *Greenough*, for plaintiff in error.
*A. Parker* and *J. Fisher*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned in this case, which is that the taxes exceeded the amount of the sale and therefore the treasurer's deed is void and vests no title in the purchaser, does not appear to exist in point of fact. Neither does it appear that any such question was made upon the trial of the cause. On the contrary, it would seem, from the president judge's charge, that the plaintiff in error had alleged on the trial, that there was a surplus of money arising from the treasurer's sale of the land after paying the taxes and costs, and, because no bond was given, as required by the act of assembly in such case, for the alleged surplus, had requested the court below to charge the jury that the sale was void on that ground. The court however, believing from the evidence adduced that the amount of the money produced by the sale was just equal to that of the taxes and costs, very properly refused to give this direction.

The next and only remaining error complained of, is, that " the court erred in charging the jury that a tract of land with a man and his family residing upon it, is unseated except so far as the settler has actually cleared and occupied, unless he entered with title." Now although I am clearly of opinion that the court erred in laying down this proposition thus broadly as law, yet I think it was unnecessary, as the case that was presented by the evidence given, did not require it. As soon as a person enters upon an unseated tract of

[Campbell v. Wilson.]

land, whether as an intruder, or tenant under a lease from the owner, and becomes a resident upon it, or, without becoming a resident, improves and occupies it in such a way as to furnish upon the land the means of making and levying the taxes by distress, it must be considered in law as *seated*, and no longer liable to be assessed with taxes, and sold for them if they remain unpaid. The commissioners or the assessors need not inquire, nor are they bound to know, by what authority he has entered upon and taken possession of the land. It is sufficient for them to see that he is there, and that he has sufficient personal property upon the land whereon to distrain and levy the amount of the taxes ; and if so, they are bound to regard it as a *seated* tract of land. It is only those lands which are not occupied in such a manner as to afford the opportunity of levying the taxes assessed by distress, that the legislature intended should be sold; and the remedy of selling them was resorted to as a measure of absolute necessity, because it was found after full experience to be impracticable to collect the taxes otherwise. All this is in accordance with the doctrine laid down in the case of *Erwin* v. *Helm*, 13 *Serg. & Rawle* 154, 155. The case under consideration has been likened to that, and it has been urged that it rules the present. In the case of *Erwin* v. *Helm*, *Van Gordon*, who lived upon the land at the time of the assessment, was there as a tenant, by agreement, under one of the owners of a tenancy in common of the fee ; the possession of any one of whom, either by himself in person or by his tenant, was the possession of the whole of the land so held in common, and might be considered the possession of the others. And although *Van Gordon*, who was thus in the actual possession at the time of the assessment, objected to being assessed for more than fifty-six acres, yet neither he nor his lessor, without the consent of the other owners in fee of the land, could have divided and set apart the fifty-six acres from the residue of the tract; nor does it appear in the case that any thing of this kind had been attempted. He was therefore considered, for the purposes of taxation, as a tenant of the whole tract. And it is there said that it is "where the possession as well as the estates of the owners are distinct, that the tenant in the possession can in no event be liable in respect of more than he actually holds," page 155.

In the case before us, the land appears to have been patented to *Samuel A. Otis* upon a warrant to *Bartholomew Wistar*, and a survey made in pursuance thereof containing four hundred and thirty-six acres and thirty-five perches. In 1814, the whole of the four hundred and thirty-six acres and thirty-five perches were assessed in the name of the warrantee, and in that same year a *William Patterson* came to live on the land in a house and improvement which he had made, claiming about fifty acres of the *Bartholomew Wistar* survey, with about as much more of other adjoining land without it. These hundred acres were assessed to him as the owner thereof, in that same year ; and on the 26th of August of that year, the common-

[Campbell v. Wilson.]

wealth granted to him a warrant for them, under which he had a survey made on the 5th of January following. After this, down to 1819 inclusive, but three hundred acres were assessed in the name of *Bartholomew Wistar* the warrantee, and during the same period one hundred acres were assessed to *William Patterson.* Now, although the dwelling house of *William Patterson* was within the lines of the *Wistar* survey, yet *Patterson* did not, like *Van Gordon,* enter upon and claim the land as tenant to any one under that warrant, he took possession adversely, designating precisely the extent of his claim by metes and bounds; for otherwise, had he taken possession generally without such designation, he would and ought to have been considered a settler upon the *Wistar* survey, and as giving to it the character of a *seated* tract. But to prevent all misapprehension, as well in respect to the nature as to the extent of his claim, immediately upon taking possession of it, he returned it to the commissioners or the assessor as containing one hundred acres, and at the same time, or shortly after, obtained a warrant for it from the commonwealth. Under these circumstances I can see no objection whatever to the residue of the *Wistar* survey, which *Patterson* excluded from his survey, being deemed unseated, unless the improvement made by *King* or *Campbell,* the plaintiff in error, changed the character of it. *King,* it seems, in the year 1816, commenced clearing some of the land, and in the course of that and the following year cleared three or four acres without raising a house or living upon it. After him the plaintiff in error continued the clearing of the land to some small extent, till 1820, when he erected a house upon it and took up his residence there, without making known either the nature or extent of his claim. If the improvement of either had been made before the assessment of the taxes for which the land was sold, and of such a nature as to have afforded the collector of the taxes a chance of levying them by distress, in the manner prescribed by the act of assembly in such case, I would have considered the land seated, and the sale made of it for the taxes void; for I think the president judge of the court below mistook the law when he said, that the tract of land thus entered on by a person without title or colour of it, although he might have property sufficient at all times upon the land to enable the collector to make the taxes out of it by distress, that the land was, notwithstanding, still to be deemed unseated, so far as it was not actually improved and enclosed by him. In this his honour appears to have confounded the rule that is applied to possession, where the statute of limitations is set up by a mere intruder, to bar the claim of the owner to the land, with the principle that is to determine and distinguish seated land from unseated, for the purposes of taxation. If the object be alike in both cases, to wit, to prevent an unnecessary sacrifice or forfeiture of men's rights to their lands, the possession of the intruder must be extended to the whole tract in the latter case, for the same reason that it is limited to the *pedis possessio* in the former. If either *King* or *Campbell* had had improve-

3 o

[Campbell v. Wilson.]

ments on and possession of the land without a residence, but at the same time personal property there at all times sufficient to have satisfied the taxes by a distress and sale of it, from the time of the first assessment down, that would have been a matter to have been referred to the jury, upon which the direction of the court as to the law respecting it, might have been asked; but as it was probably thought that the testimony was not sufficient to raise this question, it does not appear to have been made. And although I think that the actual residence of a man upon the land will give it the character of seated land, and be sufficient to prevent it from being sold as unseated for the taxes assessed upon it during such residence, whether he have property on it or not sufficient to pay the taxes; for in contemplation of the acts of assembly, residence upon the land is deemed a sufficient security for the payment of the taxes; yet it does not appear from the evidence that either *King* or *Campbell* had at any time property enough on the land to pay the taxes; nor does it appear that *Campbell*, who is the plaintiff in error, even contended on the trial that ever either of them had, before he moved upon the land to reside, which was not until the year 1820, one year at least after all the taxes, for which the land was sold, had been assessed. After a careful review of this case, and the evidence given on the trial of it, I think that part of the *Wistar* survey which was not included within *Patterson's* one hundred acres was unseated land, and continued to be so, for aught that appeared, down to the time that the plaintiff in error went on it to live; that the sale of it for taxes was therefore valid, and that the judgment of the court below ought to be affirmed.

Judgment affirmed.