# Montgomery Brothers, Incorporated, Appellant, *v.* Montgomery et al.

*Equity—Laches—Remedy at law—In limine—Waiver—Unclean hands—Act of June 7, 1907, P. L. 440.*

1. Laches will not be imputed to a plaintiff, where no injury results to defendant by reason of the delay.

2. An objection that plaintiff has an adequate remedy at law will be deemed waived unless the defendant requires the matter to be decided in limine before a hearing of the cause upon the merits, as prescribed by the Act of June 7, 1907, P. L. 440.

3. A plaintiff cannot be held to come into equity with unclean hands because of an act done by him which is not shown to be wrongful.

*Contract—Master and servant — Restraint of trade — Equity — Practice, equity—Cross bill—Appeals.*

4. Where a contract consists of two parts, one of which is a contract of employment and the other a modification of a preceding contract in restraint of trade, if the employed person is wrongfully discharged, he may sue at once to recover damages therefor; but this will not alter the rights and liabilities of the parties to the previous contract, at least until those alleged to have been wronged by the discharge shall have put themselves in the attitude of complete performance of the second contract.

5. Where a contract in restraint of trade was admittedly valid when made, but is alleged to have been modified by a later agreement, which the parties restrained would have the right to specifically enforce, the court, on a bill to enforce the restraint of trade provision of the first contract, should either grant the relief prayed for, or hold the bill until such reasonable time as a proper cross bill can be filed by the parties to the second agreement.

6. If the court below does not so order, the appellate court will reverse the decree and remit the record with directions to so proceed with the cause that equity may thus be done to both parties.

Argued January 13, 1921. Appeal, No. 151, Jan. T., 1921, by plaintiff, from decree of C. P. No. 4, Phila. Co., March T., 1919, No. 3815, dismissing bill in equity, in case of Montgomery Bros., Inc., v. Marshall Montgomery

and Montgomery-Stewart Corporation. Before MOSCH-
ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART,
SADLER and SCHAFFER, JJ. Reversed.

Bill in equity for injunction. Before McCULLEN, J.
The opinion of the Supreme Court states the facts.
The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was decree dismissing
exceptions to findings of fact and conclusions of law.

*Owen J. Roberts,* with him *J. Nelson Dick* and *Charles
H. Sayre,* for appellant.—A court of equity will enjoin a
party from violating his contract not to go into a similar
business within reasonable limits, such as the contract
of 1904 upon which the bill filed in this case is based:
Pittsburgh Stove, etc., Co. v. Penna. Stove Co., 208
Pa. 37.

The agreement of 1915 did not abrogate and supersede
or cancel the agreement of 1904, upon which this bill is
based.

The appellee, Montgomery-Stewart Corporation, is
engaged in unfair competition and should be restrained
from using the name "Montgomery" in its title: Ameri-
can Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa.
189; Suburban Press v. Suburban Pub. Co., 227 Pa. 148;
Hires v. Hires, 6 Pa. Dist. R. 285; Hoyt v. Hoyt, 143
Pa. 623.

*C. S. Wesley,* with him *J. W. McWilliams* and *F. B.
Bracken,* for appellee.—A new and independent agree-
ment concerning the same subject-matter, the provisions
of which are inconsistent with a prior agreement, be-
comes a substitute for and discharges the earlier one:
Marshall, Etc., Co. v. Traction Co., 138 Pa. 266; Ger-
mantown Dairy Co. v. McCallum, 223 Pa. 554.

Specific performance rests in the sound discretion of
the chancellor: Friend v. Lamb, 152 Pa. 529; Spotts v.
Eisenhouer, 31 Pa. Superior Ct. 89.

Defendant has not been guilty of unfair business competition.

OPINION BY MR. JUSTICE SIMPSON, February 14, 1921:

Prior to December 31, 1904, Henry S. Montgomery and Marshall Montgomery were carrying on the business of manufacturing, buying and selling rubber goods, belting, packings, hose, rubber cements, paints, varnishes and lubricants, in the City of Philadelphia, under the firm name of Montgomery Brothers, and each had a half interest therein. On this date they entered into an agreement with Montgomery Brothers, Incorporated, a corporation formed by them, and now plaintiff herein, by which they agreed to convey the business to it, and covenanted they would not "at any time within ninety-nine years from this date engage in or directly or indirectly be interested in any business in whole or in part similar to the business hereby conveyed to the corporation, except as officers or employees of said corporation, in the City of Philadelphia, under the name of Montgomery Brothers, nor under any name or title in which the word 'Montgomery' appears, nor under any similar or other name within said territory." Each of the former partners had a half interest in the corporation, but, for the purpose of enabling J. Nelson Dick to become a director with them, four shares of stock were placed in his name by Henry S. Montgomery, who remained, however, the real owner thereof.

On March 30, 1915, an agreement was entered into between plaintiff and Henry M. Stewart and Marshall Montgomery, by which it sold to them the packings and rubber goods department of the business for $60,000, settlement therefor to be made at the expiration of five years from March 1, 1915, they to have the right to use the word "Montgomery" as a part of the title of any corporation they might form to carry on the business. Pending the purchase it was agreed Stewart should be employed as manager of this branch of the business.

There were other matters provided for therein, but it is not necessary to refer to them since they in no way affected the restraint of trade clause of the contract of 1904.

On January 28, 1918, plaintiff's board of directors, by the vote of Henry S. Montgomery and Dick, and against the protest of Marshall Montgomery, adopted a resolution reciting that Stewart was not properly attending to his duties, and discharged him from its employ. Afterwards, by the vote of the same two directors, plaintiff determined not to pay any more dividends upon its stock, and also refused to continue to pay Marshall Montgomery the annual salary of $10,000 which he had theretofore been receiving, that sum being added to the $10,000 annual salary of Henry S. Montgomery, in consideration of alleged extra services thereafter required of him.

Stewart and Marshall Montgomery thereupon bought out the packing and rubber goods business of the Brown Packing Company, changed the name of the corporation to the Montgomery-Stewart Corporation, and, in respect to this character of business, entered into active competition with plaintiff in the City of Philadelphia. The latter then filed the present bill in equity against Marshall Montgomery and the Montgomery-Stewart Corporation, based solely upon the agreement of 1904, averring that defendants were violating its provisions to the injury of plaintiff, and praying an injunction thereagainst. Defendants' answer averred this agreement was wholly superseded by that of 1915, so far as the packing and rubber goods department of the business was concerned; that plaintiff was guilty of laches; that its discharge of Stewart was wrongful and hence it did not come into court with clean hands; and that it had an adequate remedy at law.

The evidence upon the trial consisted almost entirely of the agreements of 1904 and 1915, the resolution discharging Stewart, and proof that each of the corpora-

tions was constantly trying to take away from the other its business and employees. There was no evidence showing whether or not Stewart was rightfully discharged, and that relating to customers of plaintiff being misled by reason of the similarity of names, was too unimportant to receive serious consideration. The court below sustained all of defendants' contentions except the allegation of laches, entered a decree dismissing the bill, and from it the present appeal is taken.

We agree with its conclusion on the subject of laches, but disagree with it on all the other questions raised. The time was too brief to impute laches to plaintiff, and there was no proof of injury to defendants by reason of the delay. It is not necessary to consider whether plaintiff had an adequate remedy at law, since defendants did not insist upon compliance with the Act of June 7, 1907, P. L. 440, which requires this question to be decided "in limine before a hearing of the cause upon the merits," and hence this objection must be treated as waived: McConville v. Ingham, 268 Pa. 507. Nor can we agree that plaintiff came into court with unclean hands. The basis of this contention is that the discharge of Stewart was wrongful, and, as stated above, there is no evidence upon the point. As to this, the burden of proof was upon defendants, who alleged it as an affirmative defense to prevent plaintiff enforcing a right clearly given by the agreement of 1904; and, since they did not carry this burden, no unfavorable inference can be drawn from the fact of his discharge, and we need not consider the other questions raised on this branch of the case. Nor can we agree that this unexplained discharge operated to so enlarge the contract of 1915 as to cause it to supersede that of 1904 so far as the packing and rubber goods branch of the business was concerned; or indeed to affect it at all, even if the discharge was wrongful, except perhaps as hereinafter pointed out.

Assuming Stewart was improperly discharged, plaintiff became liable for the wrong thereby done; but its

punishment therefor could not legally be made to extend beyond the point necessary to give full relief to him and Marshall Montgomery. While the contract of 1915 was being complied with by both parties, Stewart had a duty to render services, and a right to the agreed compensation for so doing; but Marshall Montgomery had no right to violate the restraint of trade provision of the agreement of 1904, or to treat it as inoperative, until the expiration of the five years' period and payment or tender of the $60,000 agreed upon as the purchase price of the business. When, then, plaintiff breached the agreement of 1915 by discharging Stewart (assuming it was in the wrong) he had an immediate right to sue for damages sufficient to fully compensate him therefor; but this alone did not alter Marshall Montgomery's rights and liabilities so far as the agreement of 1904 was concerned, or, without tender or payment of the $60,000 (neither of which is averred or proved), give to him and Stewart rights under the agreement of 1915, which were predicated upon such payment being made. It is probably true—still assuming the wrongful discharge—they might at once have paid or tendered that sum and filed a bill for immediate specific performance of the agreement of 1915, which by its terms operated as a present sale of this branch of the business, though payment and delivery were postponed for five years, especially as plaintiff's act in discharging Stewart prevented him from so managing it as to maintain its standard until the time provided for the consummation of the purchase. It is unnecessary to decide this point, however, since Stewart and Marshall Montgomery did not elect to pursue this course, but instead chose to wait the expiration of the five years' period before making tender or payment. This they had the privilege of doing, and while it did not affect Stewart's right to sue immediately for damages for the alleged breach of the contract of employment, it left the restraint of trade clause in the agreement of 1904 in full force and effect until the ex-

piration of that period, for otherwise they would have the use of the $60,000 and none the less obtain rights which were not to be theirs except upon its payment. The complaints regarding the acts of Dick and Henry S. Montgomery in the matter of the dividends on the stock and the salaries of Henry S. Montgomery and Marshall Montgomery, cannot be remedied in this proceeding, or in a bill for specific performance of the agreement of 1915; but at most may be evidential in the latter if intention becomes a matter for consideration.

It follows that the court below should have either granted the injunction prayed for, or should have given Stewart and Marshall Montgomery a reasonable time to file a bill for specific performance of the latter agreement, and have suspended proceedings herein until it had been filed or such reasonable time had expired; and thereafter, upon a hearing of the whole controversy, it could, by an appropriate decree, have protected the rights of all the parties to both agreements. It could not have required Stewart and Marshall Montgomery to proceed before the expiration of the five years' period, which had not ended at the time of final decree, for the option so to do was theirs; but, if they would not, it could and should have entered a decree for plaintiff in the present proceeding, subject, to its being vacated if the agreement of 1915 was afterward specifically enforced.

The decree of the court below must, therefore, be reversed. Since it was entered, however, the five years' period has expired, and we were advised at bar that Stewart and Marshall Montgomery have tendered to plaintiff the amount agreed to be paid, and now claim the right to have the agreement of 1915 specifically enforced. Under these circumstances they should have an opportunity to litigate their claim, if they still desire so to do, without being compelled to bear the serious loss which would result from giving up or abridging the business they are now carrying on; provided, of course, plaintiff is protected from pecuniary loss.

The decree of the court below is reversed and the record is remitted with directions to enter a decree as prayed for in plaintiff's bill, but limited to the City of Philadelphia, unless Henry M. Stewart and Marshall Montgomery, or either of them, shall file a cross bill in equity for specific performance of the agreement of March 30, 1915, within such reasonable time and upon such terms and conditions as the court below shall prescribe, and shall prosecute the same with effect; the costs in this case to abide the event.